# EXHIBIT 1

**Mark David Latunski**
**06/10/2021**

```
 1              UNITED STATES DISTRICT COURT

 2           FOR THE EASTERN DISTRICT OF MICHIGAN

 3                    SOUTHERN DIVISION

 4

 5   JAMES CARLSEN,

 6

 7            Plaintiff,

 8                           Hon. Stephen J. Murphy, III

 9   vs                      Magistrate Judge Anthony P. Patti

10                           Case No. 20-cv-11517

11

12   MARK DAVID LATUNSKI,

13   by and through his Conservator,

14   PAUL LATUNSKI,

15

16            Defendant.

17                              /

18

19

20            Deposition of MARK DAVID LATUNSKI, taken

21   in the above-entitled matter before Notary Public,

22   Patricia A. Lutza, CSR, CRR, by Zoom Virtual Video

23   Conference, on Thursday, June 10, 2021, commencing at

24   about 11:30 a.m.

25
```



**Mark David Latunski**
06/10/2021

Pages 2..5

Page 2

```
 1   APPEARANCES:
 2
 3        KIRSTINA R. MAGYARI, ESQ.
 4        Marko Law, PLLC
 5        1300 Broadway Street
 6        Fifth Floor
 7        Detroit, Michigan  48226
 8        (313) 777-7529
 9        kirstie@markolaw.com
10
11            Appearing on Behalf of the Plaintiff.
12
13        CURTIS L. ZALESKI, ESQ.
14        Zaleski Law Firm, P.C.
15        535 East Main Street
16        Owosso, Michigan  48867
17        (989) 723-8166
18        curtis@azlaw.us
19
20            Appearing on Behalf of the Defendant.
21
22
23
24
25
```

Page 3

```
 1   APPEARANCES:  (continued)
 2
 3        KURT KRAUSE, ESQ. and
 4        MARY CHARTIER, ESQ.
 5        Chartier & Nyamfukudza, PLC
 6        2295 Sower Boulevard
 7        Okemos, Michigan  48864
 8        (517) 885-3305
 9        kurt@cndefenders.com
10
11            Appearing on Behalf of the Defendant.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1                  INDEX OF WITNESSES
 2   ----------------------------------------------------
 3        WITNESS                                    PAGE
 4   ----------------------------------------------------
 5        MARK DAVID LATUNSKI
 6   Examination by Ms. Magyari                         7
```

Page 5

```
 1                  INDEX OF EXHIBITS
 2   --------------------------------------------------------
 3        EXHIBITS          MARKED     OFFERED    ADMITTED
 4   --------------------------------------------------------
 5
 6        (No exhibits were marked
 7         in this deposition.)
```

HANSON RENAISSANCE — Court Reporters & Video
hansonreporting.com
313.567.8100

**Mark David Latunski**
**06/10/2021**
**Pages 6..9**

Page 6

1 Zoom Virtual Video Conference
2 Thursday, June 10, 2021
3
4 D E P O S I T I O N
5
6   VIDEO TECHNICIAN: On the record. This is
7 the video deposition of Mark Latunski being taken
8 virtually. Today is Thursday, June 10, 2021. The
9 time on the record is approximately 11:39 a.m.
10 Eastern Time. At this time would the attorneys
11 please identify themselves and affiliations for the
12 record and then our court reporter will have a
13 statement of her own and we will swear in our
14 witness.
15   MS. MAGYARI: Good morning. Kirstina
16 Magyari, on behalf of the plaintiff.
17   MR. ZALESKI: Curt Zaleski, on behalf of
18 the defendant Mark Latunski.
19   MR. KRAUSE: Kurt E. Krause, on behalf of
20 our client, who is the same client as Mr. Zaleski.
21   MS. CHARTIER: Mary Chartier, on behalf of
22 the defendant. Mr. Krause and I again represent him
23 in the criminal defense matter.
24   (The Zoom statement was read
25   by the Court Reporter.)

Page 7

1   MARK DAVID LATUNSKI
2 having been first duly sworn by the Reporter, was
3 examined and testified on his oath as follows:
4   EXAMINATION
5 BY MS. MAGYARI:
6 Q. Good morning, sir. Could you please state your full
7   name for the record.
8   MR. KRAUSE: Ms. Magyari, if I can just
9 interject here quickly, for the rest of this
10 deposition, our client, upon the advice of counsel,
11 will be invoking his Fifth Amendment right and
12 declining to answer questions. So with that, I just
13 wanted to make you aware of that fact.
14   MS. MAGYARI: Okay. I am going to proceed
15 with questioning and you can interject --
16   MR. KRAUSE: I understand he needs to
17 invoke each time.
18   MS. CHARTIER: Just so you are aware, that
19 does include his name, as the name actually is an
20 issue at the trial. So just we want to make sure
21 you know we are not trying to be obstructionist,
22 it's just I think probably every question you ask
23 will implicate the criminal defense case.
24   MS. MAGYARI: Understood.
25   MR. KRAUSE: Thank you.

Page 8

1 BY MS. MAGYARI:
2 Q. Sir, can you state your full name for the record.
3 A. **On the advice of counsel, I invoke my rights under**
4    **the Fifth Amendment and decline to answer.**
5 Q. All right. My name is Kirstina Magyari. I
6   represent James Carlsen in a lawsuit he filed
7   against you. Have you ever provided deposition
8   testimony before?
9 A. **On the advice of counsel, I invoke my rights under**
10    **the Fifth Amendment and decline to answer.**
11 Q. Do you understand why we are here today?
12 A. **On the advice of counsel, I invoke my rights under**
13    **the Fifth Amendment and decline to answer.**
14 Q. What is your date of birth, sir?
15 A. **On the advice of counsel, I invoke my rights under**
16    **the Fifth Amendment and decline to answer.**
17 Q. Where are you taking this deposition from today?
18 A. **On the advice of counsel, I invoke my rights under**
19    **the Fifth Amendment and decline to answer.**
20 Q. What is your home address?
21 A. **On the advice of counsel, I invoke my rights under**
22    **the Fifth Amendment and decline to answer.**
23 Q. Are you currently married or have you ever been
24   married?
25 A. **On the advice of counsel, I invoke my rights under**

Page 9

1    **the Fifth Amendment and decline to answer.**
2 Q. Who is Jamie Arnold?
3 A. **On the advice of counsel, I invoke my rights under**
4    **the Fifth Amendment and decline to answer.**
5 Q. Were you ever married to Jamie Arnold?
6 A. **On the advice of counsel, I invoke my rights under**
7    **the Fifth Amendment and decline to answer.**
8 Q. Do you have any children?
9 A. **On the advice of counsel, I invoke my rights under**
10    **the Fifth Amendment and decline to answer.**
11 Q. Have you ever been sued in any other lawsuit?
12 A. **On the advice of counsel, I invoke my rights under**
13    **the Fifth Amendment and decline to answer.**
14 Q. Have you ever been convicted of a crime?
15 A. **On the advice of counsel, I invoke my rights under**
16    **the Fifth Amendment and decline to answer.**
17 Q. Have you ever been diagnosed with a mental illness?
18 A. **On the advice of counsel, I invoke my rights under**
19    **the Fifth Amendment and decline to answer.**
20 Q. When were you last employed?
21 A. **On the advice of counsel, I invoke my rights under**
22    **the Fifth Amendment and decline to answer.**
23 Q. How did you come first to speak with James Carlsen?
24 A. **On the advice of counsel, I invoke my rights under**
25    **the Fifth Amendment and decline to answer.**

**Mark David Latunski**
06/10/2021
Pages 10..13

Page 10

1  Q.  What are your sexual preferences, sir?  Are you
2      bisexual?  Heterosexual?
3  A.  On the advice of counsel, I invoke my rights under
4      the Fifth Amendment and decline to answer.
5  Q.  Did you first speak to Mr. Carlsen via Facebook
6      through Jamie Arnold?
7  A.  On the advice of counsel, I invoke my rights under
8      the Fifth Amendment and decline to answer.
9  Q.  What did you and Mr. Carlsen talk about when you
10     initially met?
11 A.  On the advice of counsel, I invoke my rights under
12     the Fifth Amendment and decline to answer.
13 Q.  Did you tell Mr. Carlsen that your name was Lucas?
14 A.  On the advice of counsel, I invoke my rights under
15     the Fifth Amendment and decline to answer.
16 Q.  How many times did you speak to Mr. Carlsen before
17     he came to visit you?
18 A.  On the advice of counsel, I invoke my rights under
19     the Fifth Amendment and decline to answer.
20 Q.  At one point you bought Mr. Carlsen a ticket to come
21     visit you in Michigan; correct?
22 A.  On the advice of counsel, I invoke my rights under
23     the Fifth Amendment and decline to answer.
24 Q.  Do you recall where Mr. Carlsen is from?
25 A.  On the advice of counsel, I invoke my rights under

Page 11

1      the Fifth Amendment and decline to answer.
2  Q.  Did you set up a trip for Mr. Carlsen to come visit
3      you to engage in role play and bondage?
4  A.  On the advice of counsel, I invoke my rights under
5      the Fifth Amendment and I decline to answer.
6  Q.  What was the purpose of Mr. Carlsen's trip to come
7      visit you?
8  A.  On the advice of counsel, I invoke my rights under
9      the Fifth Amendment and decline to answer.
10 Q.  Is role play and/or bondage something that you did
11     often prior to meeting Mr. Carlsen?
12 A.  On the advice of counsel, I invoke my rights under
13     the Fifth Amendment and decline to answer.
14 Q.  How many times have you met up with strangers that
15     you did not know personally to engage in role play,
16     bondage or sexual acts?
17 A.  On the advice of counsel, I invoke my rights under
18     the Fifth Amendment and decline to answer.
19 Q.  Did you and Mr. Carlsen discuss any roles for your
20     engagement when he came to visit?
21 A.  On the advice of counsel, I invoke my rights under
22     the Fifth Amendment and decline to answer.
23 Q.  Was one of your roles not to touch people while they
24     were sleeping?
25 A.  On the advice of counsel, I invoke my rights under

Page 12

1      the Fifth Amendment and decline to answer.
2  Q.  Was one of your rules no violence, no blood and no
3      pain?
4  A.  On the advice of counsel, I invoke my rights under
5      the Fifth Amendment and decline to answer.
6  Q.  Mr. Carlsen came to visit you, you picked him up
7      from the bus station; correct?
8  A.  On the advice of counsel, I invoke my rights under
9      the Fifth Amendment and decline to answer.
10 Q.  Do you recall what you were wearing when you picked
11     him up?
12 A.  On the advice of counsel, I invoke my rights under
13     the Fifth Amendment and decline to answer.
14 Q.  Were you wearing a leather kilt?
15 A.  On the advice of counsel, I invoke my rights under
16     the Fifth Amendment and decline to answer.
17 Q.  Is a leather kilt something you would wear regularly
18     or was that a part of your role play?
19 A.  On the advice of counsel I invoke my rights under
20     the Fifth Amendment and decline to answer.
21 Q.  Do you recall what you did with Mr. Carlsen after
22     you picked him up?
23 A.  On the advice of counsel, I invoke my rights under
24     the Fifth Amendment and decline to answer.
25 Q.  Was Jamie Arnold supposed to be at your house when

Page 13

1      Mr. Carlsen came to visit?
2  A.  On the advice of counsel, I invoke my rights under
3      the Fifth Amendment and decline to answer.
4  Q.  Why wasn't Jamie Arnold there when he came to your
5      house -- Mr. Carlsen?
6  A.  On the advice of counsel, I invoke my rights under
7      the Fifth Amendment and decline to answer.
8  Q.  Did Mr. Carlsen fall asleep in your vehicle on the
9      way to your house?
10 A.  On the advice of counsel, I invoke my rights under
11     the Fifth Amendment and decline to answer.
12 Q.  What did Mr. Carlsen do when you got back to your
13     home?
14 A.  On the advice of counsel, I invoke my rights under
15     the Fifth Amendment and decline to answer.
16 Q.  Did you and Mr. Carlsen spend a few days together?
17 A.  On the advice of counsel, I invoke my rights under
18     the Fifth Amendment and decline to answer.
19 Q.  Did you watch movies about Vikings with Mr. Carlsen?
20 A.  On the advice of counsel, I invoke my rights under
21     the Fifth Amendment and decline to answer.
22 Q.  Did you place an ankle restraint on Mr. Carlsen
23     while he was sleeping?
24 A.  On the advice of counsel, I invoke my rights under
25     the Fifth Amendment and decline to answer.



**Mark David Latunski**
06/10/2021
Pages 14..17

Page 14

1  Q.  Can you describe the purpose of that ankle restraint
2      that's in your basement?
3  A.  On the advice of counsel, I invoke my rights under
4      the Fifth Amendment and decline to answer.
5  Q.  Do you recall Mr. Carlsen telling you that he was
6      unhappy that you put this restraint on him while he
7      was sleeping?
8  A.  On the advice of counsel, I invoke my rights under
9      the Fifth Amendment and decline to answer.
10 Q.  What type of role play are you interested in?
11 A.  On the advice of counsel, I invoke my rights under
12     the Fifth Amendment and decline to answer.
13 Q.  Is bondage and sexual acts something that you are
14     interested in?
15 A.  On the advice of counsel, I invoke my rights under
16     the Fifth Amendment and decline to answer.
17 Q.  Can you tell me about pig and butcher role play.
18 A.  On the advice of counsel, I invoke my rights under
19     the Fifth Amendment and decline to answer.
20 Q.  Did you do pig and butcher role play with Jamie
21     Arnold?
22 A.  On the advice of counsel, I invoke my rights under
23     the Fifth Amendment and decline to answer.
24 Q.  Pig and butcher role play involve one person being
25     hung upside down; is that correct?

Page 15

1  A.  On the advice of counsel, I invoke my rights under
2      the Fifth Amendment and decline to answer.
3  Q.  How many individuals have you engaged with pig and
4      butcher role play with?
5  A.  On the advice of counsel, I invoke my rights under
6      the Fifth Amendment and decline to answer.
7  Q.  Did you engage in pig and butcher role play with
8      Mr. Carlsen?
9  A.  On the advice of counsel, I invoke my rights under
10     the Fifth Amendment and decline to answer.
11 Q.  Were you the butcher?
12 A.  On the advice of counsel, I invoke my rights under
13     the Fifth Amendment and decline to answer.
14 Q.  Did you hang Mr. Carlsen upside down from the
15     ceiling?
16 A.  On the advice of counsel, I invoke my rights under
17     the Fifth Amendment and decline to answer.
18 Q.  Did you and Mr. Carlsen engage in oral sex?
19 A.  On the advice of counsel, I invoke my rights under
20     the Fifth Amendment and decline to answer.
21 Q.  In your sexual acts or role play, you prefer to be
22     the dominant one; correct?
23 A.  On the advice of counsel, I invoke my rights under
24     the Fifth Amendment and decline to answer.
25 Q.  Is there a room in your basement that you

Page 16

1      specifically use for your sexual encounter?
2  A.  On the advice of counsel, I invoke my rights under
3      the Fifth Amendment and decline to answer.
4  Q.  Do you call that room your sex dungeon?
5  A.  On the advice of counsel, I invoke my rights under
6      the Fifth Amendment and decline to answer.
7  Q.  Was Mr. Carlsen the first man you used this room
8      with or did you use it with other individuals as
9      well?
10 A.  On the advice of counsel, I invoke my rights under
11     the Fifth Amendment and decline to answer.
12 Q.  Did you tell Mr. Carlsen there was a room in your
13     house that was your son's room that he was forbidden
14     from entering?
15 A.  On the advice of counsel, I invoke my rights under
16     the Fifth Amendment and decline to answer.
17 Q.  Did you tell Mr. Carlsen that you consume animal
18     testicles?
19 A.  On the advice of counsel, I invoke my rights under
20     the Fifth Amendment and decline to answer.
21 Q.  Do you enjoy eating Rocky Mountain oysters?
22 A.  On the advice of counsel, I invoke my rights under
23     the Fifth Amendment and decline to answer.
24 Q.  While Mr. Carlsen and you were playing pig and
25     butcher while he was hanging upside down, did you

Page 17

1      pull a knife on him?
2  A.  On the advice of counsel, I invoke my rights under
3      the Fifth Amendment and decline to answer.
4  Q.  How did it make you feel to pull a knife on him?
5  A.  On the advice of counsel, I invoke my rights under
6      the Fifth Amendment and decline to answer.
7  Q.  Did it excite you to threaten Mr. Carlsen in this
8      way?
9  A.  On the advice of counsel, I invoke my rights under
10     the Fifth Amendment and decline to answer.
11 Q.  Was threatening Mr. Carlsen with a knife something
12     you and he discussed prior to doing so?
13 A.  On the advice of counsel, I invoke my rights under
14     the Fifth Amendment and decline to answer.
15 Q.  Did Mr. Carlsen react when you pulled a knife on
16     him?
17 A.  On the advice of counsel, I invoke my rights under
18     the Fifth Amendment and decline to answer.
19 Q.  Was there a point where Mr. Carlsen left your home?
20 A.  On the advice of counsel, I invoke my rights under
21     the Fifth Amendment and decline to answer.
22 Q.  Did you go into your basement and found that he had
23     left?
24 A.  On the advice of counsel, I invoke my rights under
25     the Fifth Amendment and decline to answer.



HANSON RENAISSANCE Court Reporters & Video
hansonreporting.com
313.567.8100

**Mark David Latunski**
06/10/2021
Pages 18..21

Page 18

1  Q.  What did you do after Mr. Carlsen left?
2  A.  **On the advice of counsel, I invoke my rights under**
3      **the Fifth Amendment and decline to answer.**
4  Q.  Did he have to cut himself out of the restraints you
5      placed on him in order to get free?
6  A.  **On the advice of counsel, I invoke my rights under**
7      **the Fifth Amendment and decline to answer.**
8  Q.  Do you have any idea why Mr. Carlsen would have
9      left?
10 A.  **On the advice of counsel, I invoke my rights under**
11     **the Fifth Amendment and decline to answer.**
12 Q.  Did you know that he took your car keys at that
13     time?
14 A.  **On the advice of counsel, I invoke my rights under**
15     **the Fifth Amendment and decline to answer.**
16 Q.  Did you ask him why he took your car keys or why he
17     left?
18 A.  **On the advice of counsel, I invoke my rights under**
19     **the Fifth Amendment and decline to answer.**
20 Q.  Was Mr. Carlsen trying to go home at this time?
21 A.  **On the advice of counsel, I invoke my rights under**
22     **the Fifth Amendment and decline to answer.**
23 Q.  Did you tell him that you wouldn't purchase him a
24     ticket to go home and his ticket wasn't good for a
25     few more days?

Page 19

1  A.  **On the advice of counsel, I invoke my rights under**
2      **the Fifth Amendment and decline to answer.**
3  Q.  Did Mr. Carlsen have to go back to your house?
4  A.  **On the advice of counsel, I invoke my rights under**
5      **the Fifth Amendment and decline to answer.**
6  Q.  Do you recall telling police that Mr. Carlsen left
7      your house and had been walking down the street
8      going to Owosso?
9  A.  **On the advice of counsel, I invoke my rights under**
10     **the Fifth Amendment and decline to answer.**
11 Q.  How many times have you had men over to your house
12     to engage in role play?
13 A.  **On the advice of counsel, I invoke my rights under**
14     **the Fifth Amendment and decline to answer.**
15 Q.  What did you and Mr. Carlsen do when he returned to
16     your home?
17 A.  **On the advice of counsel, I invoke my rights under**
18     **the Fifth Amendment and decline to answer.**
19 Q.  How long did Mr. Carlsen stay at your home?
20 A.  **On the advice of counsel, I invoke my rights under**
21     **the Fifth Amendment and decline to answer.**
22 Q.  Did you eventually take Mr. Carlsen to the airport?
23 A.  **On the advice of counsel, I invoke my rights under**
24     **the Fifth Amendment and decline to answer.**
25 Q.  Did you purchase the ticket for Mr. Carlsen to go to

Page 20

1      Hawaii?
2  A.  **On the advice of counsel, I invoke my rights under**
3      **the Fifth Amendment and decline to answer.**
4  Q.  Did Mr. Carlsen ever tell you he wanted to leave
5      sooner and just go home?
6  A.  **On the advice of counsel, I invoke my rights under**
7      **the Fifth Amendment and decline to answer.**
8  Q.  Did you have any idea that Mr. Carlsen had spoken to
9      police at that time?
10 A.  **On the advice of counsel, I invoke my rights under**
11     **the Fifth Amendment and decline to answer.**
12 Q.  Does the term hero have any special significance to
13     you?
14 A.  **On the advice of counsel, I invoke my rights under**
15     **the Fifth Amendment and decline to answer.**
16 Q.  After Mr. Carlsen left for Hawaii, did you make any
17     plans for the future?
18 A.  **On the advice of counsel, I invoke my rights under**
19     **the Fifth Amendment and decline to answer.**
20 Q.  Did you communicate with Mr. Carlsen in any format
21     after he left your home?
22 A.  **On the advice of counsel, I invoke my rights under**
23     **the Fifth Amendment and decline to answer.**
24 Q.  How often did you speak if at all after he left your
25     home?

Page 21

1  A.  **On the advice of counsel, I invoke my rights under**
2      **the Fifth Amendment and decline to answer.**
3  Q.  When is the last time you spoke to Mr. Carlsen?
4  A.  **On the advice of counsel, I invoke my rights under**
5      **the Fifth Amendment and decline to answer.**
6  Q.  Did you tell Mr. Carlsen about spending time with
7      Kevin Bacon?
8  A.  **On the advice of counsel, I invoke my rights under**
9      **the Fifth Amendment and decline to answer.**
10 Q.  What did you tell him about Kevin Bacon?
11 A.  **On the advice of counsel, I invoke my rights under**
12     **the Fifth Amendment and decline to answer.**
13 Q.  Is Kevin Bacon another man that came over to your
14     house to engage in sex for role play with you?
15 A.  **On the advice of counsel, I invoke my rights under**
16     **the Fifth Amendment and decline to answer.**
17 Q.  How did you meet Kevin Bacon?
18 A.  **On the advice of counsel, I invoke my rights under**
19     **the Fifth Amendment and decline to answer.**
20 Q.  Did you engage in any pig and butcher role play with
21     Mr. Bacon?
22 A.  **On the advice of counsel, I invoke my rights under**
23     **the Fifth Amendment and decline to answer.**
24 Q.  Did you hang Kevin Bacon from the ceiling like you
25     hung Mr. Carlsen from the ceiling?



**Mark David Latunski**
**06/10/2021**
Pages 22..25

Page 22

1  A.  On the advice of counsel, I invoke my rights under
2      the Fifth Amendment and decline to answer.
3  Q.  What else did you do with Kevin Bacon?
4  A.  On the advice of counsel, I invoke my rights under
5      the Fifth Amendment and decline to answer.
6  Q.  Did you tell Mr. Carlsen that you ate Kevin Bacon's
7      oyster?
8  A.  On the advice of counsel, I invoke my rights under
9      the Fifth Amendment and decline to answer.
10 Q.  When you use the word oyster in this context, did
11     you mean his testicle?
12 A.  On the advice of counsel, I invoke my rights under
13     the Fifth Amendment and decline to answer.
14 Q.  Did you fry and eat Kevin Bacon's testicle?
15 A.  On the advice of counsel, I invoke my rights under
16     the Fifth Amendment and decline to answer.
17 Q.  Did you video chat with Mr. Carlsen while Kevin
18     Bacon was at your house?
19 A.  On the advice of counsel, I invoke my rights under
20     the Fifth Amendment and decline to answer.
21 Q.  And Kevin Bacon is deceased; correct?
22 A.  On the advice of counsel, I invoke my rights under
23     the Fifth Amendment and decline to answer.
24 Q.  Was Kevin Bacon already deceased when you video
25     called Mr. Carlsen?

Page 23

1  A.  On the advice of counsel, I invoke my rights under
2      the Fifth Amendment and decline to answer.
3  Q.  What happened to Kevin Bacon?
4  A.  On the advice of counsel, I invoke my rights under
5      the Fifth Amendment and decline to answer.
6  Q.  Did the police come to your home while you were on
7      the phone with Mr. Carlsen?
8  A.  On the advice of counsel, I invoke my rights under
9      the Fifth Amendment and decline to answer.
10 Q.  Did you tell Mr. Carlsen that you killed Kevin
11     Bacon?
12 A.  On the advice of counsel, I invoke my rights under
13     the Fifth Amendment and decline to answer.
14 Q.  Did you kill Kevin Bacon?
15 A.  On the advice of counsel, I invoke my rights under
16     the Fifth Amendment and decline to answer.
17 Q.  Who is Edgar Hill?
18 A.  On the advice of counsel, I invoke my rights under
19     the Fifth Amendment and decline to answer.
20 Q.  Do you recall telling police that your name was
21     Edgar Hill?
22 A.  On the advice of counsel, I invoke my rights under
23     the Fifth Amendment and decline to answer.
24 Q.  What about the name Bilk, B-I-L-K?
25 A.  On the advice of counsel, I invoke my rights under

Page 24

1      the Fifth Amendment and decline to answer.
2  Q.  Between the time where Mr. Carlsen had been at your
3      house and Kevin Bacon had been at your house, do you
4      recall a time where another man was seen running
5      from your home?
6  A.  On the advice of counsel, I invoke my rights under
7      the Fifth Amendment and decline to answer.
8  Q.  Do you recall that man's name?
9  A.  On the advice of counsel, I invoke my rights under
10     the Fifth Amendment and decline to answer.
11 Q.  How did you meet that man?
12 A.  On the advice of counsel, I invoke my rights under
13     the Fifth Amendment and decline to answer.
14 Q.  Did you engage in role play with that man as well?
15 A.  On the advice of counsel, I invoke my rights under
16     the Fifth Amendment and decline to answer.
17 Q.  Did you pull a knife on that man as well, is that
18     why he was running from your house?
19 A.  On the advice of counsel, I invoke my rights under
20     the Fifth Amendment and decline to answer.
21 Q.  Can you tell me about the roles that you and
22     Mr. Carlsen had set for when he came to your house?
23 A.  On the advice of counsel, I invoke my rights under
24     the Fifth Amendment and decline to answer.
25 Q.  Did Mr. Carlsen consent to you pulling a knife on

Page 25

1      him or threatening him?
2  A.  On the advice of counsel, I invoke my rights under
3      the Fifth Amendment and decline to answer.
4  Q.  Can you tell me about the type of activities you and
5      Mr. Carlsen engaged in at your home?
6  A.  On the advice of counsel, I invoke my rights under
7      the Fifth Amendment and decline to answer.
8  Q.  Where were you working at the time you met
9      Mr. Carlsen?
10 A.  On the advice of counsel, I invoke my rights under
11     the Fifth Amendment and decline to answer.
12 Q.  Did you own the home that you had Mr. Carlsen over
13     to visit you in?
14 A.  On the advice of counsel, I invoke my rights under
15     the Fifth Amendment and decline to answer.
16 Q.  How did you afford to buy Mr. Carlsen a ticket to
17     Hawaii?
18 A.  On the advice of counsel, I invoke my rights under
19     the Fifth Amendment and decline to answer.
20 Q.  Did you know why he wanted to go to Hawaii?
21 A.  On the advice of counsel, I invoke my rights under
22     the Fifth Amendment and decline to answer.
23 Q.  Do you regularly meet men online and invite them
24     over to your house and engage in role play or
25     bondage?



**Mark David Latunski**
06/10/2021
Pages 26..27

Page 26

1  A.  On the advice of counsel, I invoke my rights under
2      the Fifth Amendment and decline to answer.
3  Q.  Did you and Mr. Carlsen make any plans for the
4      future when he left your home for Hawaii?
5  A.  On the advice of counsel, I invoke my rights under
6      the Fifth Amendment and decline to answer.
7            MS. MAGYARI:  All right.  That's all I
8      have for you, Mr. Latunski.  Thank you.
9            VIDEO TECHNICIAN:  Are there any questions
10     from anybody else?
11           MS. CHARTIER:  No.  Thank you.
12           MR. ZALESKI:  I have no questions.
13           VIDEO TECHNICIAN:  All right then.  That
14     concludes this deposition.  We are going off the
15     record.  The time is 12:02 p.m.
16           MS. MAGYARI:  Etran, please.
17           MR. ZALESKI:  I like the mini, pdf mini.
18           MR. KRAUSE:  The same, please.
19     (Deposition concluded at about 12:03 p.m.)

Page 27

1                CERTIFICATE OF REPORTER
2
3  STATE OF MICHIGAN )
                     )  SS
4  COUNTY OF INGHAM  )
5
6            I hereby certify that on the date and at
7  the place hereinbefore set forth, I reported
8  stenographically the proceedings held in the matter
9  hereinbefore set forth, and that the testimony so recorded
10 was subsequently transcribed by me with the use of
11 computer-aided transcription under my direction and
12 supervision, and that the foregoing is a full, true and
13 accurate transcript of my original stenotype notes.
14
15
16
17  _____
18  Patricia A. Lutza
    (CSR-2493)
19  Certified Shorthand Reporter
20
    Notary Public:
21  County of Eaton
    My Commission Expires:
22  June 6, 2024
23
24
25

HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video   313.567.8100